# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SINCERE TERRY et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. CIV-22-521-G** |
| GENTNER DRUMMOND, in his official | ) | |
| capacity as Oklahoma Attorney | ) | |
| General, et al., | ) | |
| | ) | |
| **Defendants.**[1] | ) | |

## <u>ORDER</u>

Now before the Court is a Motion for Preliminary Injunction (Doc. No. 10), filed by Plaintiffs Sincere Terry, Mia Hogsett, Tyreke Baker, Preston Nabors, Trevour Webb, and Austin Mack.  In their Motion, Plaintiffs seek a preliminary injunction enjoining the enforcement of Oklahoma's Riots and Unlawful Assemblies Statute, Okla. Stat. tit. 21, §§ 1311-1320.10, during the pendency of this lawsuit.  Defendants, Oklahoma Attorney General Gentner Drummond and Oklahoma County District Attorney Vicki Behenna, have submitted a Response in Opposition (Doc. No. 18), and Plaintiffs have submitted a Reply (Doc. No. 23).

### I.    *Background*

Shortly after statehood, the State of Oklahoma adopted a statute criminalizing riot, unlawful assembly, and rout.  *See* Okla. Stat. tit. 21, §§ 1311-1320.10 (1910) (the "Act").

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Oklahoma County District Attorney Vicki Behenna is automatically substituted in her official capacity in place of former Oklahoma County District Attorney David Prater as a defendant in this lawsuit.

The Act prohibits participation in a riot, defined as "[a]ny use of force or violence, or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law." *Id.* § 1311; *see also id.* § 1320.1.  The Act further prohibits participation in an unlawful assembly, defined as existing

> [w]herever three or more persons assemble with intent or with means and preparations to do an unlawful act which would be riot if actually committed, but do not act toward the commission thereof, or whenever such persons assemble without authority of law, and in such a manner as is adapted to disturb the public peace, or excite public alarm.

*Id.* § 1314.  The Act was amended in 1969 to additionally prohibit "Incitement to Riot," defined to exist when

> a person or persons, intending to cause, aid, or abet the institution or maintenance of a riot, [does] an act or engage[s] in conduct that urges other persons to commit acts of unlawful force or violence, or the unlawful burning or destroying of property, or the unlawful interference with a police officer, peace officer, fireman or a member of the Oklahoma National Guard or any unit of the armed services officially assigned to riot duty in the lawful performance of his duty.

*Id.* § 1320.2 (eff. Mar. 25, 1969).

Plaintiffs are young people from the Oklahoma City area engaged in racial and social justice activism.  *See* Compl. (Doc. No. 1) ¶¶ 14-26.  After a police officer with the Minneapolis Police Department murdered George Floyd, an unarmed Black man, in late May of 2020, protests advocating against police brutality and for racial justice occurred across the United States.  Plaintiffs participated in and led protests in Oklahoma City.  *See*

Pls.' Mot. (Doc. No. 10) at 8; Terry Decl. (Doc. No. 10-7) ¶¶ 3-4; Hogsett Decl. (Doc. No. 10-8) ¶ 4.

In June of 2020, Plaintiffs and other persons gathered nightly in front of the Oklahoma City Police Department ("OCPD") Headquarters to protest.  Terry Decl. ¶¶ 8-9.  During these nightly protests, Plaintiffs and other persons began planning a mural outside of OCPD Headquarters that would "depict a series of flags honoring Black Lives and symbolizing solidarity, community, and shared struggles."  Hogsett Decl. ¶ 9.  A protester obtained permits to paint the mural on Shartel Avenue between Colcord Drive and West Main Street, outside of the OCPD Headquarters.  *See* Pls.' Mot. Ex. 2 (Doc. No. 10-2) at 2.  Following issuance of the permit, municipal employees blocked off space for the mural on Shartel Avenue with traffic barricades.  *Id.*  Plaintiffs and other protesters began painting the mural on June 21, 2020.  Baker Decl. (Doc. No. 10-9) ¶ 9.

On the third day of painting, an OCPD officer moved a barricade in order to access the OCPD Headquarters with his vehicle, resulting in a disagreement between Plaintiffs and the officer regarding the appropriate barricade position.  *See* Pls.' Mot. at 8-9; Pls.' Mot. Ex. 2, at 3-6.  Some facts regarding this encounter are disputed, such as whether Plaintiffs surrounded the officer's vehicle and then pursued the vehicle on foot when the officer attempted to drive away from the area.  *Compare* Pls.' Mot. Ex. 2, at 4-5, *with* Terry Decl. ¶¶ 13-16.  It does not appear to be disputed that Plaintiffs stood near and around the officer's vehicle, which was occupied by the officer and another person, with their fists

3

raised and shouted, "Fuck the police!," "Hit me if you want to!," and "Now who got a mother fucking barricade?"  Pls.' Mot. Ex. 2, at 4-5; Terry Decl. ¶¶ 13-14.

Following this encounter, Plaintiffs were charged in Oklahoma County District Court with Incitement to Riot in violation of title 21, section 1320.2 of the Oklahoma Statutes.  *See* Pls.' Mot. at 10; Pls.' Mot. Ex. 1 (Doc. No. 10-1).  As a result of these charges, Plaintiffs represent that they have "limited their speech out of fear of arrest and prosecution for exercising their First Amendment right to free speech."  Pls.' Mot. at 10.

On June 23, 2022, Plaintiffs initiated this action in federal court pursuant to 42 U.S.C. § 1983, alleging that the Act is facially unconstitutional under the First and Fourteenth Amendments because the definition of riot set out in section 1311 of the Act is overbroad and vague.  *See* Compl. ¶¶ 127-150.  Plaintiffs now seek a preliminary injunction enjoining enforcement of the Act during the pendency of this lawsuit.  *See* Pls.' Mot. at 6.

## II.    *Applicable Legal Standards*

Federal Rule of Civil Procedure 65 allows a district court to issue a preliminary injunction.  *See* Fed. R. Civ. P. 65.  "Because a preliminary injunction is an extraordinary remedy never awarded as of right, the movant must make a clear and unequivocal showing it is entitled to such relief."  *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021) (citation and internal quotation marks omitted).  As explained by the Tenth Circuit,

> Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant

outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).  In the context of constitutional claims, the second factor "collapses" into the first, as "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury."  *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805-06 (10th Cir. 2019).  The third and fourth preliminary injunction factors merge when the government is the party opposing the injunction.  *See Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020).

"[C]ourts disfavor some preliminary injunctions and so require more of the parties who request them."  *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (internal quotation marks omitted).

> Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial.  Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win.  To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

*Id.* (citations and internal quotation marks omitted).

Because Plaintiffs' Motion asks the Court to enjoin enforcement of a state law that has been on the books for over 100 years and therefore change the status quo, Plaintiffs

seek a disfavored injunction.   Accordingly, the heightened standard articulated above applies.

III.    *Discussion*

Plaintiffs contend that the statutory definition of riot articulated in section 1311 of the Act is both unconstitutionally overbroad and vague on its face.  *See* Pls.' Mot. at 30. The Court has considered the potential for success of Plaintiffs' claims for overbreadth and vagueness and concludes that Plaintiffs have not made the requisite strong showing of a likelihood of success on the merits on either claim.

A. Overbreadth

Plaintiffs argue that the language of section 1311 is overbroad because rather than criminalizing only "true threats," this provision criminalizes "*any* threat to use violence or force," and so encompasses protected speech.  Pls.' Mot. at 13-14.

"The First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges."  *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression."  *Id.* at 118-19 (citation and internal quotation marks omitted).

The overbreadth analysis first requires the court to construe the challenged statute, as "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."  *United States v. Williams*, 553 U.S. 285, 293 (2008).  After

construing the statute, the court then considers whether the statute, as construed, "criminalizes a substantial amount of protected expressive activity" relative to its legitimate sweep. *Id.* at 297.

In construing a state statute, a federal court must remain cognizant that "state courts are the final arbiters of state law." *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004). "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* (alteration and internal quotation marks omitted). A federal court, however, is "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000) (internal quotation marks omitted); *see also Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975) ("[A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts and its deterrent effect on legitimate expression is both real and substantial." (citation omitted)).

1. Section 1311 Construed

Plaintiffs argue that section 1311 is overbroad on its face because the statute "criminalizes speech and expressive conduct that goes far beyond the limited definition of true threats." Pls.' Mot. at 12. "True threats" of violence is a historically unprotected category of communications. *Counterman v. Colorado*, 600 U.S. 66, 74 (2023).[2] "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements

_____

[2] The Supreme Court issued its opinion in *Counterman* after the parties fully briefed Plaintiffs' Motion for Preliminary injunction. *See* Doc. No. 29.

that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* True threats instead "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

"Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat . . . ." *Counterman*, 600 U.S. at 74. "The existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Id.* (internal quotation marks omitted). The United States Supreme Court has recently clarified that the *mens rea* required to be proved to show a true threat is recklessness, meaning that "a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Id.* at 79 (internal quotation marks omitted).

Plaintiffs first argue that "Oklahoma courts have construed [section 1311's] 'any threat' language to mean just that—'any threat,'" and so section 1311 encompasses and criminalizes communications beyond true threats. Pls.' Mot. at 13-14 (citing *Schoolcraft v. State*, 178 P.2d 641, 650 (Okla. Crim. App. 1947); *Crawford v. Ferguson*, 115 P. 278, 279 (Okla. Crim. App. 1911)). The decisions Plaintiffs cite in support of this proposition are from 1911 and 1947, however, well before the United States Supreme Court developed its caselaw regarding the definition of true threats discussed above. Thus, as noted by Defendants, it is not to be expected that the Oklahoma Legislature would have inserted the "word 'true' into the definition of a riot to make it clear that the statute is not intended to

cover false or hyperbolic threats."  Defs.' Resp. (Doc. No. 18) at 11.  The Court concludes that the absence of the word "true" from section 1311 does not, by itself, render the statute overbroad.  *See Williams*, 553 U.S. at 304 ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." (internal quotation marks omitted)).

Plaintiffs further contend that section 1311 does not expressly contain an intent element and has been construed by Oklahoma courts to not require an intent element.  *See* Pls.' Mot. at 14.  Plaintiffs, in support of this assertion, cite a 1911 case in which the Oklahoma Court of Criminal Appeals ("OCCA") stated that "it matters not what the intention of the parties who committed the [riotous] acts may have been."  *Crawford*, 115 P. at 280; *see also* Pls.' Mot. at 14.  With that statement, the OCCA was not rejecting an intent requirement for riot under section 1311.  Rather, as is clear from the immediately preceding passage, the OCCA was instructing that actions undertaken for good and noble political reasons may still constitute an unlawful riot: "It matters not how good their intentions may be, if three or more persons, without authority of law, combine together, and by threats to use force or violence, if accompanied by immediate power of execution, seek to accomplish any unlawful purpose, they are guilty under the law of riot . . . ."  *Crawford*, 115 P. at 279-80.

Indeed, in *Crawford* and later cases the OCCA has interpreted section 1311 to require elements regarding intent that are not expressly stated in the statute.  *See* Defs.' Resp. at 13-14.  In *Crawford*, the OCCA specified that to be guilty of riot, three or more persons acting together must "seek to accomplish any unlawful purpose."  115 P. at 279.

Several years later, the OCCA specified that an information charging riot must allege all required elements of the offense and that it was not enough to simply recite the language of the statute. *See Casteel v. State*, 161 P. 330, 330 (Okla. Crim. App. 1916). Specifically, the OCCA instructed that the charging document should allege that the defendants charged with riot acted together willfully and with a common intent to use force or violence. *See id.* ("We are of the opinion the information, to have been sufficient to charge a riot, should have alleged that the defendants (naming them) did unlawfully assemble with the *common intent to use force and violence* against the person of another (naming him), and then and there, in furtherance of such unlawful intent, and *acting together willfully, unlawfully, and riotously*, used force and violence against the person named[.]" (emphasis added)). Other opinions from the OCCA also support the proposition that those charged under section 1311 must share a common intent to use force or violence and must act willfully. *See Swartzfeger v. State*, 45 P.2d 550, 551 (Okla. Crim. App. 1935) ("The information in this case charges the defendants with a common intent to use force and violence against [the victim] and with the unlawful, riotous, and wrongful intent to do him great bodily harm. This information sufficiently charges the offense of riot."); *see also Symonds v. State*, 89 P.2d 970, 977 (Okla. Crim. App. 1939); *Primrose v. State*, 222 P. 702, 702 (Okla. Crim. App. 1924).

While the facts of the cases cited above involved the use of force and violence, it is reasonable and readily apparent that the OCCA would construe section 1311 to likewise require willfulness and a common intent as to "any threat to use force or violence." Okla.

Stat. tit. 21, § 1311; *see Stenberg*, 530 U.S. at 944.[3]  Affording section 1311 its plain

meaning and applying the intent elements articulated by the OCCA, the statute defines the

offense of riot as follows: Any use of force or violence, or any threat to use force or

violence if accompanied by immediate power of execution, by three or more persons acting

together, willfully, without authority of law, and sharing a common intent to use force or

violence or to unlawfully threaten to use force or violence.  *See Casteel*, 161 P. at 330.

2. Whether Section 1311 Encompasses a Substantial Amount of Protected Speech Relative to Its Legitimate Sweep

Having construed the statute, the Court must now consider whether section 1311, as

construed, criminalizes a substantial amount of protected expressive activity relative to its

legitimate sweep.  *See Williams*, 553 U.S. at 297.  Plaintiff argues that section 1311

"criminalizes any threat, which includes protected expressive activity such as political

---

[3] In *Schoolcraft*, decided in 1947, the OCCA stated that "[i]n order for the proof of the State to sustain a conviction for riot, it was only necessary to show that three or more persons acted together and used force or violence towards someone without authority of law or to show any threat to use force or violence accompanied by immediate power of execution." *Schoolcraft*, 178 P.2d at 650.  Later, in *Wright v. State*, decided in 1973, the OCCA found that the "charging portion of the information reflect[ed] all of the elements set out under [section 1311]." *Wright*, 505 P.2d 507, 515 (Okla. Crim. App. 1973).  This Court does not read either of these statements as invalidating prior decisions interpreting section 1311 as requiring willfulness and a common intent to use force or violence, or as suggesting that the OCCA would not similarly require proof of a common intent to unlawfully threaten to use force or violence.  In *Schoolcraft*, the charging document— which the OCCA found to be improper as a result of duplicity and not for failure to adequately charge riot—alleged that the defendants had acted "willfully" and "with a common design and intent." *Schoolcraft*, 178 P.2d at 643.  Similarly, while the OCCA did not conduct an in-depth analysis of the sufficiency of the information in *Wright* as the defendant had waived such a challenge to a defect in the charging document, the information alleged that the defendants acted "conjointly and together" and "wilfully, unlawfully, and feloniously." *Wright*, 505 P.2d at 514-15.

hyperbole." Pls.' Mot. at 15 (emphasis omitted). Plaintiffs offer several examples of hyperbole that they argue would constitute riot under section 1311, including yelling, while attending a demonstration or protest: "Fuck the Police,"[4] "the Governor needs to resign, or else!," and "the District Attorney better think twice before trying to prosecute my friend for riot!" *Id.* at 15, 18.

Under the facts of the hypotheticals Plaintiffs offer, these statements would be protected under the First Amendment as political hyperbole.[5] But contrary to Plaintiffs' assertions, none of these hypotheticals would constitute actionable riot under section 1311. First, none of the hypotheticals offered includes, by its express language, a threat to use force or violence. Second, none of the hypotheticals offered indicates that the communications are accompanied by immediate power of execution of a threat to use force or violence. And finally, none of the hypotheticals indicates that the statements were made

---

[4] Plaintiff states that "Fuck the Police" was one of the statements "upon which Plaintiffs' charges were based." Pls.' Mot. at 17-18. Defendants disagree with this allegation. *See* Defs.' Resp. at 9-10. As this action is a facial challenge to section 1311, the Court need not determine whether this statement was a basis for Plaintiffs' Incitement to Riot charges. The Court notes that by itself such a statement would constitute protected speech, as a reasonable person would understand the statement to be political hyperbole. *See Thurairajah v. City of Fort Smith*, 925 F.3d 979, 985 (8th Cir. 2019) ("Criticism of law enforcement officers, even with profanity, is protected speech.").

[5] Threats may be implied, however. The Court offers an obvious example: a protester at a demonstration shouts, "the Governor needs to resign, or else!" or "the District Attorney better think twice before prosecuting my friend!" while carrying a rifle with the Governor or District Attorney within sight. With this additional factual context, such a statement would likely constitute a true threat, as the speaker should be aware that under the circumstances "others could regard his statements as threatening violence," but he "delivers them anyway." *Counterman*, 600 U.S. at 79 (internal quotation marks omitted). Accordingly, this speech would likely not be protected under the First Amendment.

by three or more persons acting together, willfully, without authority of law, and with a common intent to use force or violence or unlawfully threaten to use force or violence. Accordingly, these hypotheticals do not establish that section 1311 criminalizes a substantial amount of protected expressive activity.

Plaintiffs also offer another hypothetical. A rancher spots a truck parked on his land without permission, and so the rancher confronts the truck driver with at least two of his ranch hands and tells the truck driver, "You'd better get out of here before we kick your butt." Pls.' Mot. at 17.[6] This statement, though, would likely constitute an unprotected true threat under the circumstances Plaintiffs articulate because it meets the recklessness standard of *Counterman*—that is, the rancher should have known that the truck driver could regard his statement as threatening violence and delivered it anyway. *See Counterman*, 600 U.S. at 79. And whether the hypothetical posed would constitute riot under section 1311 depends on facts that Plaintiffs do not provide, such as whether the ranch hands were interacting with the rancher willfully and with a common intent to use force or violence or

---

[6] Plaintiffs assert that, under the facts articulated in this hypothetical, the District Court for the District of South Dakota reasoned that, "even though the rancher's speech would be protected under the First Amendment, the speech would have been prohibited under South Dakota's riot statute." Pls.' Mot. at 17 (citing *Dakota Rural Action v. Noem*, 416 F. Supp. 3d 874, 889 (D.S.D. 2019)). Plaintiffs expound significantly upon the scenario the court posed, however. In its opinion, the court articulated the rancher hypothetical as follows:

[A] rancher and a couple of his ranch hands see that a Keystone Pipeline truck is on some of the rancher's rangeland without permission. The three of them confront the truck driver and they know they are going to give him some clear instruction to get off the ranch, but not fighting words to get off the ranch, and they are not going to do anything physical even though they could.

*Dakota Rural Action*, 416 F. Supp. 3d at 889.

unlawfully threaten to use force or violence.[7]  Accordingly, this hypothetical also does not support the proposition that section 1311 criminalizes a substantial amount of protected speech.[8]

Plaintiffs, as the party seeking a disfavored injunction, bear the burden of making a "strong showing" of a likelihood of success on the merits.  *See Mrs. Fields Franchising*, 941 F.3d at 1232.  Plaintiffs have not offered a hypothetical under which section 1311, as construed, would criminalize protected speech.  Accordingly, Plaintiffs have not made a strong showing of a likelihood of success on the merits as to their overbreadth challenge.

B.  Vagueness

Plaintiffs also argue that the Court should enjoin enforcement of section 1311 because the law is unconstitutionally vague.  *See* Pls.' Mot. at 20-23.  Vagueness is a due process issue.  *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  "[S]tandards of permissible statutory vagueness are strict in the area of free expression."  *NAACP v.*

---

[7] Plaintiffs cite *Dakota Rural Action*, in which a federal district court enjoined portions of South Dakota's Riot Boosting Statute, adopted in 2019, in support of their motion for injunction.  *See* Pls.' Mot. at 17; *Dakota Rural Action*, 416 F. Supp. 3d at 894.  One portion of the law enjoined therein contained language almost identical to that in section 1311 by establishing liability for a person who "makes any threat to use force or violence, if accompanied by immediate power of execution, by three or more persons acting together and without authority of law."  *Dakota Rural Action*, 416 F. Supp. 3d at 888.  Notably, however, the South Dakota court applied no limiting construction like the kind found to be applicable in this case—i.e., that section 1311 requires willful action and the common intent to use force or violence or to unlawfully threaten to use force or violence.

[8] In their Reply, Plaintiffs offer additional hypotheticals in which they contend that constitutionally protected speech would be criminalized as riot under section 1311 regardless of the speaker's intent.  None of these additional hypotheticals takes into account this Court's construction of section 1311 to require willfulness and the common intent to unlawfully threaten to use force or violence, however.

*Button*, 371 U.S. 415, 432 (1963).  In a facial challenge for vagueness, a plaintiff "must show, at a minimum, that the challenged law would be vague in the vast majority of its applications; that is, that 'vagueness permeates the text of [the] law.'"  *Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006) (alteration in original) (quoting *City of Chicago v. Morales,* 527 U.S. 41, 55 (1999)); *see also Johnson v. United States*, 576 U.S. 591, 602-03 (2015) (explaining that the Court's "holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp" (emphasis omitted)).

A law may be unconstitutionally vague in two instances.  *See Harmon v. City of Norman*, 61 F.4th 779, 797 (10th Cir. 2023).  "'First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.'"  *Id*. at 797-98 (quoting *Jordan v. Pugh*, 425 F.3d 820, 824-25 (10th Cir. 2005).  "Because we can never expect mathematical certainty from our language, a court deciding whether a challenged statute provides fair notice often considers factors such as the enactment's purpose, the harm it attempts to prevent, whether there is a scienter requirement, and the interpretations of individuals charged with enforcement."  *Jordan*, 425 F.3d at 825 (citation and internal quotation marks omitted).

Plaintiffs first argue that section 1311 is void for vagueness because the provision's "acting together" language does not contain a *mens rea* element and so "does not provide sufficient notice to peaceful protesters exercising their First Amendment rights such that they are apprised of exactly what conduct is forbidden."  Pls.' Mot. at 20 (alteration,

omission, and internal quotation marks omitted). As explained previously, however, applying the decisions of the OCCA, this Court construes section 1311 to require that a group of three or more people must act together willfully[9] and with a common intent to use force or violence or unlawfully threaten to use force or violence. These requirements provide sufficient notice to peaceful protesters as to what conduct constitutes riot under section 1311. Plaintiffs have therefore not demonstrated that section 1311 is vague for a lack of a *mens rea* or intent requirement.

Plaintiffs also argue that section 1311 authorizes or encourages arbitrary and discriminatory enforcement. *See id.* at 20-23. Specifically, Plaintiffs argue that section 1311 "does not establish minimal guidelines for law enforcement to properly distinguish an innocent participant of a public demonstration that turns violent from the participant who intentionally uses violence or force." *Id.* at 23. It is true that in some circumstances it will be difficult for an observer to immediately discern whether a specific participant in a protest intended to unlawfully threaten violence, just as it is true that in some circumstances it is difficult to discern whether a specific participant in any common criminal activity shared a common intent with another person to commit a crime. But those discernments can be made in many instances, and when they cannot—that is, when the

---

[9]"By statutory definition, '[W]illfully when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or the omission referred to. It does not require any intent to violate law, or to injure another . . . .'" *Fairchild v. State*, 998 P.2d 611, 620 (Okla. Crim. App. 1999) (alteration and omission in original) (quoting Okla. Stat. tit. 21, § 92).

evidence does not support a finding of probable cause such as is required to effect an arrest—law enforcement is not empowered to act.

Additionally, in support of their argument that section 1311 authorizes or encourages arbitrary and discriminatory enforcement, Plaintiffs argue that the statute "has already been enforced in an arbitrary and discriminatory manner against Plaintiffs," pointing to the statements and conduct of police officers and former District Attorney Prater following Plaintiffs' arrests. *See id*. at 21-22.  The Court does not here comment on the propriety or impropriety of any of the cited comments or actions.  The Court does, however, note that the Complaint alleges that the probable cause affidavits and application for arrest of Plaintiffs include "factually inaccurate claims about Plaintiffs' conduct," suggesting that certain facts contained in the affidavits and application were either embellished or fabricated.  Compl. ¶¶ 101-109.  Even assuming that the alleged comments and conduct of law enforcement evidence a discriminatory animus, the fact that Plaintiffs allege that law enforcement had to embellish or fabricate facts in order to manufacture probable cause to support Plaintiffs being charged with Incitement to Riot undermines the contention that the statute itself authorizes or encourages arbitrary and discriminatory enforcement.

Finally, Plaintiffs argue that "the legislative history of the 2021 Amendments to the Riot Statute, House Bill 1674 ('H.B. 1674'), reveals animus toward racial justice protesters and invites discriminatory enforcement of the Riot Statute and related laws."  Pls.' Mot. at 22.  Those amendments did not change the language of the provision at issue in this

17

lawsuit—section 1311, which was enacted over a century ago.  Accordingly, the legislative history of that bill is not material to the Court's vagueness analysis.[10]

For the reasons explained above, Plaintiffs have not shown, at this stage, that section 1311 would be vague in the vast majority of its applications.

## C. Summary

Plaintiffs therefore have not made a strong showing of a likelihood of success on the merits with regard to either of their First Amendment claims, and so the Court need not analyze the remaining preliminary injunction requirements.  Consequently, the Court concludes that Plaintiffs are not entitled to a preliminary injunction.

CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Preliminary Injunction (Doc. No. 10) is DENIED.

IT IS SO ORDERED this 16th day of February, 2024.

CHARLES B. GOODWIN
United States District Judge

---

[10] In a separate challenge, a judge of this Court preliminarily enjoined portions of House Bill 1674 from taking effect, and on the State's interlocutory appeal the Tenth Circuit certified questions of state law to the OCCA.  The parties then stipulated to the dismissal of the case and the dissolution of the preliminary injunction.  *See Okla. State Conf. of NAACP v. O'Connor*, No. CIV-21-859-C (W.D. Okla.); H.B. 1674, 2021 Leg., 58th Sess. (Okla. 2021).